# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SEATRADE GROUP N.V., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-2771 |
| | § | |
| 6,785.5 METRIC TONS OF CEMENT, | § | |
| *in rem*, AND ROYAL WHITE | § | |
| CEMENT INC., *in personam*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Royal White Cement, Inc. has moved for countersecurity under Rule E(7)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. (Docket Entry No. 42). Plaintiff-intervenor, Emar Shipping, has responded. Based on the present record, this court denies the motion for countersecurity, for the reasons explained below.

**I.     Background**

Plaintiff Seatrade Group, Inc. filed this admiralty suit, alleging that Royal White was liable for dead freight charges because only 6,785.5 metric tons of cement were shipped on Seatrade's vessel from Egypt to Texas, instead of the 8,000 tons that were set out in the charter party agreements. Emar intervened in September 2005, asserting that it had a valid maritime lien for the deadfreight charges because it had entered into a charter party for the shipment. The cargo was arrested. Seatrade stipulated to a voluntary dismissal, leaving

Emar's claim as a charterer/disponent owner of the vessel carrying the cement. This court held that Emar had a valid maritime lien and ordered Royal White to pay security in the amount of $130,000 to secure the release of its cargo from arrest. Royal White now moves for countersecurity for two categories of damages: ocean freight charges and cargo handling charges it incurred in loading and transporting to Houston the 1,214.50 metric tons of cargo that was not shipped from Egypt with the remaining cargo; and damages for diminution of the value of the cement that was arrested by Emar and/or the costs of reconditioning and repackaging the cargo damaged by the arrest. Royal White asserts that the total is $160,000. Emar opposes the countersecurity on the basis that a claim for wrongful arrest of cargo is not subject to countersecurity under Rule E(7) and that the other grounds are not included in Royal White's counterclaim.

## II.  Discussion

Rule E(7) provides in relevant part:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

Supplemental Rules for Certain Admiralty and Maritime Claims R. E(7)(a). The purpose of this rule is "to place the parties on an equality as regards security." *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 638–39 (1924)

(construing former Admiralty Rule 53). Although the language of the rule is automatic, it is not absolute; the original seizing complainant may be excused by the court "for cause shown." *Titan Navigation, Inc. v. Timsco, Inc*., 808 F.2d 400, 403 (5th Cir. 1987). The determination of "for cause shown" is relegated to the sound discretion of the trial court. *Id.* In exercising that discretion, a court should consider whether the posting of countersecurity will prevent the plaintiff from prosecuting its claims, whether the countersecurity involves the release of seized property, whether the counterclaim is frivolous, whether the counterplaintiff could have proceeded in rem and the potential injustice of requiring one party to post security while the other party does not. *Id.*; *Afram Lines Int'l, Inc. v. M/V Capetan Yiannis*, 905 F.2d 347 (11th Cir. 1990); *Result Shipping v. Feruzzi Trading USA*, 56 F.3d 394 (2d Cir. 1995).

Royal White's answer and counterclaim against Emar Shipping seeks damages for the wrongful arrest of the cargo, including deterioration of the cargo. (Docket Entry No. 15, p. 5). In the answer, Royal White describes Emar's allegation that Royal White was responsible for loading its cargo on the vessel and therefore responsible for the dead freight claim for 1,214.50 metric tons. (*Id.*, p. 4). Royal White does not, however, allege that Emar or Seatrade was responsible for the failure to load that portion of the cargo. Nor does Royal White's counterclaim allege that Emar is liable for the costs and expenses Royal White incurred in shipping the 1,214.50 metric tons to Houston. Instead, the answer and

counterclaim alleges only that Emar was not the disponent owner of the M/V SPRING DELI and had no right to arrest the 6,785.5 tons of cargo that was seized. (*Id.*, pp. 4–5).

"[A] counterclaim 'arising out of the same transaction or occurrence' as the original claim is a prerequisite to the posting of counter-security under Rule E(7)." *Incas & Monterey Printing & Packaging, Ltd. v. M/V SANG JIN*, 747 F.2d 958, 960 n.6 (5th Cir. 1984). The plain language of Rule E(7) provides for countersecurity "[w]hen a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action," and limits the amount of the countersecurity to the "damages demanded in the counterclaim. . . ." Supplemental Rules for Certain Admiralty and Maritime Claims R. E(7)(a). Courts have required a pending counterclaim to consider a related motion for countersecurity. *See, e.g.*, *Weeks Marine, Inc. v. M/V UNIMASTER*, No. 97-1947, 1997 WL 660624, at *3 (E.D. La. Oct. 23, 1997) (unpublished opinion) (holding that Rule E(7) "allows for counter-security only when a counterclaim is asserted" and that defendant's motion for countersecurity was moot after the court dismissed its counterclaim).

Royal White does not counterclaim for losses sustained in shipping the 1,214.50 metric tons of cement left on the dock in Egypt to Houston. Rule E(7) does not provide for countersecurity for a loss not alleged in a pending counterclaim. The loss that is alleged in the counterclaim is Royal White's damages for wrongful arrest. Royal White seeks countersecurity for damages it alleges it sustained in the diminution in the value of its arrested cargo and the cost of reconditioning and repackaging the cargo after the arrest.

(Docket Entry No. 42, p. 3).  This loss is alleged in Royal White's counterclaim.  (Docket Entry No. 15, p. 5).  The courts have held that a counterclaim for wrongful seizure is not an appropriate basis for requiring countersecurity under Rule E(7).  *Incas*, 747 F.2d at 964.  In *Incas and Monterey Printing and Packing, Ltd. v. M/V SANG JIN*, 747 F.2d 958 (5th Cir. 1984), the court held that countersecurity may be required only when a counterclaim is a compulsory counterclaim under Federal Rule of Civil Procedure 13(a).  *Id.*  The court held that a wrongful seizure action does not arise out of the same transaction or occurrence as a breach of contract of carriage action, is not a compulsory counterclaim, and is not the appropriate basis for requiring countersecurity under Rule E(7).  "[W]e see no justification for applying Rule E(7) to a broader class of counterclaims than that permitted under F.R.Civ.P. 13(a)."  *Id.* at 965.

### III.  Conclusion

On the basis of the present record, Royal White's motion for countersecurity is denied.

SIGNED on January 17, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge