## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SEATRADE GROUP N.V., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-2771 |
| | § | |
| 6,785.5 METRIC TONS OF CEMENT, | § | |
| *in rem*, AND ROYAL WHITE | § | |
| CEMENT, INC., *in personam*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

On August 2, 2006, this court granted defendant Royal White Cement, Inc.'s motion for plaintiff-intervenor Emar Shipping to post countersecurity in the amount of $130,000.00. (Docket Entry No. 60).  Emar moved for reconsideration and asked for an opportunity to demonstrate its financial inability to comply.  (Docket Entry No. 61).  This court stayed its order requiring Emar Shipping to post countersecurity and granted Emar sixty days to submit evidence.  (Docket Entry No. 62).  Emar submitted documents that it asserted demonstrated its financial inability to post countersecurity as ordered.  (Docket Entry No. 63).  Royal White filed a response, arguing that Emar's submissions did not evidence its financial condition.  (Docket Entry No. 64).

This court has carefully reviewed the motion and response, the record, the parties' submissions, and the applicable law.  Based on that review, this court denies Emar Shipping's motion for reconsideration.  The reasons are explained below.

## I.     Background

The facts underlying this maritime contract dispute are set out in this court's previous rulings.  Briefly, Emar Shipping intervened to assert a maritime lien for deadfreight charges that resulted when only 6,785.5 metric tons of cement were shipped from Egypt to Texas on Seatrade's vessel rather than the 8,000 tons set out in the charter party agreements.  The cargo was seized under the maritime lien.  Seatrade later stipulated to a voluntary dismissal, leaving Emar's claim as a charterer/disponent owner of the vessel carrying the cement.  This court held that Emar had a valid maritime lien and ordered Royal White to post security in the amount of $130,000.00 to secure the release of its cargo.  Royal White counterclaimed against Emar and requested that Emar be required to post countersecurity in the amount of $160,000.00.  The countersecurity was to cover Royal White's counterclaims against Emar for stevedoring and ocean freight charges it incurred in shipping to Houston the 1,214.5 metric tons of cement left on the docks in Egypt.  The parties are to arbitrate their underlying dispute and agree that this litigation should be stayed.  The countersecurity issue is the only issue remaining in this court pending the arbitration.  After extensive briefing and a thorough examination of the facts and law, this court ordered Emar Shipping to post a countersecurity of $130,000.00, equal to the amount of security that Royal White posted on the original claim.

Emar Shipping is headquartered in Beirut, Lebanon.  It moved to stay and for an opportunity to present evidence of financial inability to post countersecurity due to the recent conflict in Lebanon.  Emar Shipping has submitted an unsworn affidavit of its general

2

manager, Salame Salame, but one of the four pages is missing.  The affidavit stated that between February 2006 and July 2006, Emar's bank account had an average daily balance of just over $22,000.00.  Emar also attached a bank statement showing that this particular Emar account held an average daily balance of approximately $22,000.00 between February and July 2006.

## II.    Analysis

The legal standards are not in dispute.  Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides in relevant part:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

FED. R. CIV. P. SUPP. R. E(7)(a).  The purpose of this rule is "to place the parties on an equality as regards security."  *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629, 638–39 (1924) (construing former Admiralty Rule 53).  Although the language of the rule is automatic, it is not absolute; the original seizing complainant may be excused by the court "for cause shown."  *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987).  Determining whether cause is shown to require the payment of countersecurity, and in what amount, is within the trial court's discretion.  *Id.* at 403; *First Md. Leasecorp. v. M/V Golden Egret*, 764 F.2d 749, 758 n.4

(11th Cir. 1985).  In exercising that discretion, a court must weigh "the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection." *Titan*, 808 F.2d at 403.  A court should consider whether the posting of countersecurity will prevent the plaintiff from prosecuting its claims, whether the countersecurity involves the release of seized property, whether the counterclaim is frivolous or so lacking in merit that it was advanced "solely to secure a negotiating advantage over the complainant," whether the counterplaintiff could have proceeded *in rem,* and the potential injustice of requiring one party to post security while the other party does not.  *Id.*; *Afram Lines Int'l, Inc. v. M/V Capetan Yiannis*, 905 F.2d 347, 349–50 (11th Cir. 1990); *Result Shipping Co. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 400 (2d Cir. 1995). The Fifth Circuit has stated that the "guidon for this analysis is the court's obligation to preserve the integrity of maritime liens.  These vintage security devices endure and are protected because of their commercial usefulness. . . . [T]he ability of a ship's master to bind his vessel *in rem* continues to facilitate the prompt supply of goods and services." *Titan*, 808 F.2d at 404.

A court should not order countersecurity if it would diminish the utility of the maritime lien by unfairly or unreasonably inhibiting the plaintiff's prosecution of its case. "[T]he court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring

the defendant-counterclaimant to post security without affording reciprocal protection." *Id.* Courts should not require countersecurity in an amount so great that the original plaintiff is forced to give up his initial claim because he cannot produce the required countersecurity. *Id.* at 404–05.  The fact that a party is financially unable to post countersecurity should not result in dismissal of its original claim.  *Id.* at 403 (citations omitted).  Finally, "the court should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant."  *Id.* at 404.

In its earlier Memorandum and Opinion, this court denied Royal White's motion for countersecurity as to damages claimed as a result of the allegedly wrongful arrest of its cargo.  This court granted Royal White's motion to require Emar to post countersecurity for the stevedoring and shipping costs allegedly incurred in shipping the 1,214.50 metric tons of cement left on the docks in Egypt, but limited the amount to the security posted on the original claim.  The court noted that Emar had neither contended nor shown any inability to pay countersecurity.   The issue now before this court is whether Emar's subsequent submissions show that it cannot do so.

This court finds that Emar has not demonstrated that it is financially unable to post countersecurity in the amount of $130,000.00.  Neither Salame's affidavit nor the pages of the bank statement show that Emar is unable to comply with the countersecurity order.  Emar has not shown "cause" to be excused from posting the countersecurity.  *Titan*, 808 F.2d at 403.

Emar's motion for reconsideration is denied.  This court's stay of its August 2, 2006 order is lifted.  Emar is ordered to pay $130,000.00 in countersecurity into the registry of this court within 10 days from the date this order is entered, to be held by the United States District Clerk for the Southern District of Texas, to secure Royal White's counterclaims against Emar Shipping in this action.   This case otherwise remains stayed and administratively closed pending arbitration.  It may be reinstated to this court's active docket by motion filed by either party within 30 days after the conclusion of the arbitration proceedings.

SIGNED on December 15, 2006, at Houston, Texas.

Lee H. Rosenthal
United States District Judge