**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SEATRADE GROUP N.V., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-2771 |
| | § | |
| 6,785.5 METRIC TONS OF CEMENT, | § | |
| *in rem*, AND ROYAL WHITE | § | |
| CEMENT INC., *in personam*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

On August 2, 2006, this court granted defendant Royal White Cement, Inc.'s motion

for plaintiff-intervenor Emar Shipping to post countersecurity in the amount of $130,000 to

secure its counterclaims. (Docket Entry No. 60). The $130,000 matched the amount of

security Royal White Cement had paid in December 2005 to secure the release of its cargo

of cement from arrest. Emar Shipping moved for reconsideration and asked for an

opportunity to demonstrate its financial inability to comply. (Docket Entry No. 61). This

court stayed its order to allow Emar Shipping to submit evidence of its financial condition.

(Docket Entry No. 62). This court reviewed the submissions and Royal White Cement's

response and denied Emar Shipping's motion for reconsideration, ordering it to submit

countersecurity in the amount of $130,000. Emar Shipping has failed to do so. Royal White

1

Cement then moved for release of the $130,000 security it had paid in December 2005. Emar Shipping has failed to respond to the motion for release of the security.

The facts underlying this maritime contract dispute are set out in this court's previous rulings. Briefly, Emar Shipping intervened to assert a maritime lien for deadfreight charges that resulted when only 6,785.5 metric tons of cement were shipped from Egypt to Texas on Seatrade's vessel rather than the 4,000 tons set out in the charter party agreements. The cargo was seized under the maritime lien. Seatrade later stipulated to a voluntary dismissal, leaving Emar Shipping's claim as a charterer/disponent owner of the vessel carrying the cement. This court held that Emar Shipping had a valid maritime lien and ordered Royal White to post security in the amount of $130,000.00 to secure the release of its cargo. Royal White counterclaimed against Emar Shipping and asked this court that Emar be required to post countersecurity in the amount of $160,000.00. The countersecurity was to cover Royal White's counterclaims against Emar Shipping for stevedoring and ocean freight charges it incurred in shipping to Houston the 1,214.5 metric tons of cement left on the docks in Egypt. With the parties' consent, their disputes have been referred to arbitration and this litigation stayed.

After extensive briefing and a thorough examination of the facts and law, this court ordered Emar Shipping to post a countersecurity of $130,000.00, equal to the amount of security that Royal White posted on the original claim. Emar Shipping's motion for reconsideration was denied.

The legal standards are not in dispute. Rule E(7) provides in relevant part:

> When a person who has given security for damages in the
> original action asserts a counterclaim that arises from the
> transaction or occurrence that is the subject of the original
> action, a plaintiff for whose benefit the security has been given
> must give security for damages demanded in the counterclaim
> unless the court for cause shown, directs otherwise.
> Proceedings on the original claim must be stayed until this
> security is given unless the court directs otherwise.

SUPPLEMENTAL RULES FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS R. E(7)(a).  The

purpose of this rule is "to place the parties on an equality as regards security."

*Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S.

629, 638–39 (1924) (construing former Admiralty Rule 53).  The court has discretion to

require the payment of countersecurity and in what amount.  *First Md. Leasecorp. v. M/V

Golden Egret*, 764 F.2d 749, 758 n.4 (11th Cir. 1985).  In exercising that discretion, a court

must weigh "the importance of the security interest giving rise to the initial seizure, and the

burden of posting countersecurity, against the potential injustice of requiring the defendant-

counterclaimant to post security without affording reciprocal protection."  *Titan*, 808 F.2d

at 403.  A court should consider whether the posting of countersecurity will prevent the

plaintiff from prosecuting its claims, whether the countersecurity involves the release of

seized property, whether the counterclaim is frivolous or so lacking in merit that it was

advanced "solely to secure a negotiating advantage over the complainant," whether the

counterplaintiff could have proceeded *in rem,* and the potential injustice of requiring one

party to post security while the other party does not.  *Id.*; *Afram Lines Int'l, Inc. v. M/V

Capetan Yiannis*, 905 F.2d 347 (11th Cir. 1990); *Result Shipping v. Feruzzi Trading USA*,

3

56 F.3d 394 (2d Cir. 1995). The Fifth Circuit has stated that the "guidon for this analysis is the court's obligation to preserve the integrity of maritime liens. These vintage security devices endure and are protected because of their commercial usefulness. . . . [T]he ability of a ship's master to bind his vessel *in rem* continues to facilitate the prompt supply of goods and services." *Titan Navigation, Inc. v. Timsco*, 808 F.2d 400, 403 (5th Cir. 1987).

In its earlier Memorandum and Opinion, this court denied Royal White's motion for countersecurity as to damages claimed as a result of the allegedly wrongful arrest of its cargo. This court granted Royal White's motion to require Emar Shipping to post countersecurity for the stevedoring and shipping costs allegedly incurred in shipping the 1,215.50 metric tons of cement left on the docks in Egypt, but limited the amount to the security posted on the original claim. This court found that Emar Shipping had not demonstrated that it is financially unable to post countersecurity in the amount of $130,000 or other "cause" to be excused from posting the countersecurity. *Titan Navigation, Inc. v. Timsco*, 808 F.2d at 403. Emar Shipping has failed to pay countersecurity as required. Royal White, which paid security to obtain the release of its cement cargo, has its principal place of business in this district and other business locations in the United States. By contrast, Emar Shipping has no known property, places of business, or assets in the United States. To place the parties on an equal basis with regard to security, it is ordered that Royal White's $130,000 payment be released and returned.

Royal White's motion for release of security is granted. This case otherwise remains stayed and administratively closed pending arbitration. It may be reinstated to this court's

4

active docket by motion filed by either party within 30 days after the conclusion of the arbitration proceedings.

SIGNED on January 31, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge